IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH WHITE<br>　Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.<br>　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br>CIVIL ACTION NO. 4:20-cv-00039<br><br><br>JURY DEMANDED |

PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Kenneth White ("Plaintiff" or "White"), and complains of United Parcel Service, Inc. ("Defendant" or "UPS") and for his causes of action would show the Court as follows:

I.
INTRODUCTION

1. This action seeks equitable relief, actual, compensatory, and punitive damages, attorney's fees, expert witness fees, taxable costs of court, prejudgment and post-judgment interest for violations of rights protected Plaintiff under, 42 U.S.C. §1981, and for violations of rights guaranteed to Plaintiff under the Age Discrimination in Employment Act of 1964, as amended, 29 U.S.C. §621, et seq. Plaintiff also sues for race and age discrimination, and retaliation, under the Texas Commission on Human Rights Act (TCHRA), Tex. Lab. Code Ch. 21.001, *et seq*.

II.
PARTIES

2. Plaintiff is an individual who resided in Harris County, Texas, at the time the cause of action accrued.

3. Defendant UPS is a business incorporated under the law of Ohio, but conducting major operations and maintaining business facilities in the State of Texas. UPS is an employer engaged in an industry affecting interstate commerce, that employs more than 15 regular employees. Defendant regularly conducts business in the state of Texas. It may be served through its registered agent for service, Corporation Service Company d/b/a/ CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Ste 620, Austin, Texas 78701-3218.

III.
JURISDICTION AND VENUE

4. This is a civil action over which this court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), and 1367.

5. The Court has personal jurisdiction over Defendant since Defendant maintains regular business locations in the district, and the acts giving rise to this suit occurred within the State of Texas.

6. Venue is proper in the Southern District of Texas, under 28 U.S.C. § 1391(b) since a substantial part of the events or omissions giving rise to this cause of action occurred in the Southern District of Texas.

IV.
PROCEDURAL REQUISITES

7. On or about September 23, 2019, Plaintiff filed a Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC"), and concurrently filed charges of discrimination and retaliation with the Texas Workforce Commission, Civil Rights Division.

8. On or after October 7, 2019, the EEOC issued a Notice of Right to Sue letter entitling Plaintiff to file an action in this Court.

9.     This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue letter.

10.    All conditions precedent to filing this cause of action have been met.

## V.
## FACTS

11.    Plaintiff White is a 54-year old black male.  He began working with United Parcel Service in 2005. Over the course of his employment White achieved the rank of "business manager." Around October 2017 White was transferred to the Southwest Center to serve as Business Manager of that operations center. When White was transferred to the Southwest Center, he was under the supervision of Art Wilson. In January 2018, Wilson was replaced by Kyle Shumaker. Shumaker immediately made it clear that he had a problem with White, wholly unrelated to White's performance, which had always been good. Shumaker immediately subjected White to embarrassing and demeaning age-related insults. These insults, including frequently referring to White as "old dog" and other age-related insults in conjunction with insulting statements, were often made over the radio so all at the facility could hear, including White's subordinates whom he was responsible for overseeing. Though White tried to ignore the behavior, it became so pervasive and abusive that White began suffering stress-related physical symptoms. With a few days of Shumaker taking the supervisory position over from Wilson, Shumaker suddenly and without notice moved White to a night shift, as pre-load manager. The day of the sudden transfer, White was required to work his full day shift and then begin the night shift immediately that evening. He was not given an opportunity to make arrangements for the change from day to night with his family, or to make any preparations for such a big change. The pre-load overnight shift was widely known as the least desirable shift in the company. Thereafter, Shumaker's abusive and discriminatory behavior toward White continued.

12.     White tried to endure the abuse and hostility without complaint, but in late January 2018 White reported the behavior to Ron Mayorga, the Southern Operations Manager. White told Mayorga that the hostility was causing stress with physical symptoms. Mayorga's only response was to suggest that White seek medical treatment for the symptoms.

13.     Plaintiff was transferred again in June 2018. He was transferred back again to the Southwest Center in October 2018. Immediately upon his return the treatment resumed. White was repeatedly put in situations clearly intended to set him up for failure, including transfers during the busiest planning month of the year, October. In October, UPS managers plan for the holiday season and the following year, including routes, schedules, and vacations. Each business manager is responsible for the long-range planning for his or her business center. When White was transferred in October 2018, he arrived to find that none of that planning had been done, and he had unreasonably limited time to prepare those plans. After he worked incredibly hard to meet that goal, and did, he was again transferred, this time to the Katy Center. At the time of this transfer in December 2018, UPS was opening another business center in Willowbrook. As a result, the affected business managers were required to develop amended route and related business plans in light of the new facility. White arrived at the Katy Center to find that none of the required plans had been prepared by his predecessor, and he was again faced with an unreasonable task to meet within an unreasonable timeframe. To make matters worse, UPS management temporarily assigned all of White's immediate direct reports to the new location without any notice to White. These actions by UPS management were clearly designed to set White up for failure.

14. Finally, on March 29, 2019, matters came to a breaking point, In a meeting attended by a number of business managers and supervisors, a subordinate with a history of temper issues got

4

angry with Plaintiff White and threatened to kill him. Corey White, a on-road supervisor ranked below Plaintiff White, threatened to shoot Plaintiff White, and promised to "kiss [White's] cheek" while White lay in his coffin. Plaintiff White asked the Division Manager, Ron Reed, to remove Corey White from the meeting. Despite UPS's alleged zero tolerance policy regarding violence, Reed did absolutely nothing to address the threats. Instead, the meeting was allowed to continue. Corey White, evidently emboldened by Reed's failure to do anything to stop him, escalated his violence. He called Plaintiff White "n------", and said he would "F--- [Plaintiff] up." He began to throw objects and violently shoved office furniture, including the conference table. Another employee, Brandon Crawford, was struck by the table, and moved in to restrain Corey White.

15. Plaintiff left the office. As a result of this confrontation, the physical stress-related symptoms Plaintiff had been suffering severely worsened. He sought medical treatment. Plaintiff returned to work on April 4, 2019. Plaintiff White was concerned that Reed had not addressed any of Corey White's behavior in the intervening days, so Plaintiff White contacted UPS corporate offices directly to make a complaint. Despite Plaintiff White's complaints, UPS took no action. White became increasingly fearful with Corey White working in the same facility and having evidently gotten away with such violent and threatening behavior. Plaintiff White's stress-related physical symptoms, coupled with his fear, became so great that he was placed on medical disability by his treating physician.

16. UPS took no action to investigate or address White's complaints, beginning with his discrimination complaints and culminating in the behavior and threats by Corey White. To the extent Human Resources conducted any investigation, it was a sham, designed to paper its file in the event of a future claim.

17. UPS did not subject younger or non-black employees to such actions. The direct evidence of discrimination, the evidence of transfers to significantly undesirable assignments, the frequent transfers, UPS's refusal to investigate much less address Plaintiff White's complaints, and the culmination of its disparate treatment of Plaintiff White through its refusal to investigate complaints of discrimination or address the egregious behavior by another employee, clearly reflect discriminatory and retaliatory animus. The actions of UPS management, both directly and through its refusal to address the behavior of other employees, the treatment of Plaintiff, and the repeated, abusive comments related to Plaintiff's age and race were so pervasive and severe as to create a work environment that a reasonable person would find intimidating, hostile, or abusive.

18. UPS did not have in place an effective policy regarding age discrimination, race discrimination, or retaliation. UPS failed to take any action to remedy the discrimination and retaliation occurring in Plaintiff's work environment.

## VI.
## FIRST CAUSE OF ACTION – AGE DISCRIMINATION

19. Plaintiff is a member of a protected class by reason of his age.

20. Plaintiff suffered an adverse employment action.

21. Plaintiff was qualified for the position.

22. Plaintiff was replaced by someone outside the protected class or was treated differently from similarly-situation, non-protected employees.

## VII.
## SECOND CAUSE OF ACTION – RACE DISCRIMINATION

23. Plaintiff is a member of a protected class by reason of his race.

24. Plaintiff suffered an adverse employment action.

25.  Plaintiff was replaced by someone outside the protected class or was treated differently from similarly-situated, non-protected employees.

## VIII.
## THIRD CAUSE OF ACTION – RETALIATION

26.  Plaintiff engaged in protected activity, namely, he reported discriminatory behavior against him.

27.  After Plaintiff complained about the treatment, he was subjected to sudden and repeated re-assignments, very unfavorable working conditions, and increasing hostility from his co-workers and supervisors, such that the conduct and treatment constituted unlawful retaliation.

## IX.
## DAMAGES

28.  As a result of Defendant's discrimination and retaliation, Plaintiff has suffered loss of wages, bonuses, benefits, loss of opportunity and earning capacity, both in the past and in the future, as well as emotional pain and mental anguish, impairment, and disability, suffering, inconvenience, in the past, and in all probability will continue to suffer in this regard in the future.

## X.
## PUNITIVE DAMAGES

29.  UPS, its agents and employees, acted with malice and reckless indifference to Plaintiff's legally protected rights. Thus Plaintiff is entitled to an award of punitive damages.

## XI.
## JURY DEMAND

30.  Plaintiff requests a trial by jury on all issues triable by a jury in this case.

## XII.
## RELIEF REQUESTED

31.  WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following relief:

a. Judgment entered for the Plaintiff against Defendant for damages;

b. Injunctive relief such as may be available to redress Plaintiff's damages;

c. For actual and liquidated damages for the period of time provided by law, including appropriate backpay and reimbursement for lost pension, insurance, and all other benefits;

d. Past and future lost wages, backpay and front pay in lieu of reinstatement;

e. For compensatory damages, punitive damages, and liquidated damages as allowed by law;

f. For attorneys' fees;

g. For pre-judgment and post-judgment interest as allowed by law;

h. For costs of court, costs of prosecuting Plaintiff's claim; and

i. For such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

THE HANSEN LAW FIRM, P.C.
*/s/ Jakki A. Hansen*
Jakki A. Hansen
Attorney-in-Charge
State Bar No. 24000886
10190 Katy Freeway, Ste 440
Houston, Texas 77043
Telephone: 281.888.4364
Facsimile: 888.492.9819
*jhansen@hansenlawfirmpc.com*

ATTORNEY FOR PLAINTIFF KENNETH WHITE